# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LAWRENCE R. CLEMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:14-cv-01690 |
| ) | JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON COUNTY, ) | |
| TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pending before the Court is a motion for summary judgment brought by Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"). Docket No. 42. For the reasons set forth herein, the Court will GRANT Defendant's motion.

## I. Factual Background and Procedural History

Plaintiff Lawrence Clemons brings this action against Metro—his employer— alleging that Metro discriminated against him because of his race and retaliated against him for filing a charge of discrimination, in violation of 42 U.S.C. § 2000e, et seq. ("Title VII"), and Tenn. Code Ann. § 4–21–101, et seq. ("THRA"). Plaintiff is an African American man who has been employed by Metro since 2007. Metro hired him for a position in Public Works as a Special Operations Supervisor. Docket No. 42-2 at 25. In 2012, Metro transferred him to Metro Water Services (MWS) and placed him in a masonry worker position. *Id.*

In December 2012, MWS hired a Caucasian man from the private sector—Brady Rich—for the position of Field Crew Supervisor. On January 27, 2013, Plaintiff filed a grievance with MWS based on the department's hiring Mr. Rich without allowing Plaintiff or others to apply for the

position. On February 27, 2013, MWS sent a letter to Plaintiff indicating that, as a result of Plaintiff's complaint, MWS was going to rescind the appointment of Mr. Rich and publicly announce the position. Docket No. 42-2 at 15 (MWS letter). MWS did not, however, announce the position or fill it thereafter. Docket No. 23 at ¶ 25 (Am. Compl.). MWS continued Mr. Rich's employment in a different position, which Plaintiff alleges had the same pay and benefits and also was an un-posted, newly-created position. *Id.* at ¶ 26; Docket No. 50 at 12.

At some point in 2013, MWS chose Plaintiff for a temporary, "out-of-class" Compliance Inspector 2 position for which he had applied and which paid more than he was earning at the time. MWS commonly places employees in out-of-class assignments, in which employees perform job duties and responsibilities of a different position on a temporary basis and are compensated at the rate of that position. According to Plaintiff, the out-of-class position is often a higher-paying position than the one the employee is currently occupying. The Civil Service Rules prohibit an employee from working out of class for more than 100 days in a calendar year without an extension from the Civil Service Commission. Plaintiff believes that Metro uses the practice of placing employees in out-of-class positions as a way to promote Caucasian employees, who are often placed into the higher-paying position without allowing others to compete for the position and are then allowed to stay in that position in excess of the 100-day limit imposed by the Civil Service Rules. Docket No. 23 at ¶ 48.

Plaintiff has several complaints related to his selection for this Compliance Inspector 2 position. First, he asserts that Metro does not usually require a formal application process to place an employee in a temporary, out-of-class placement but required him to go through a formal, competitive process for this placement. Second, although Metro selected him for this out-of-class,

temporary position, he complains that Metro only allowed him to remain in the position for 100 days, unlike Caucasian employees, and then returned him to his former position. Third, Metro required another formal application process to hire a person permanently into that position. Plaintiff applied, but Metro initially did not select him. When he complained, Metro created a second position, and selected him for the second position. Fourth, Metro required him go through a second probationary period once it hired him for the permanent position. Docket No. 23 at ¶¶ 32–36 (Amended Complaint).

On September 24, 2013, Plaintiff filed a *pro se* EEOC charge alleging that Metro had discriminated against him by denying him the ability to apply for the December 2012 position for which Mr. Rich was initially hired. Docket No. 42-2 at 16. This EEOC charge did not mention his complaints related to the Compliance Inspector 2 position. Plaintiff did not initiate any proceedings with a state or local agency. *Id.*

In December 2013, MWS selected Mr. Rich for a Codes Department position. Plaintiff believed, mistakenly, that Metro had not made this position available for others to apply.

On May 21, 2014, Plaintiff received a Right to Sue letter from the EEOC.

In May 2014, Metro required Plaintiff and another African American employee to help move heavy furniture.

On August 19, 2014, Plaintiff filed this action, asserting that Metro discriminated and retaliated against him in violation of Title VII and the Tennessee Human Rights Act (THRA). On November 3, 2014, he filed his First Amended Complaint. Docket No. 23. He claims that Metro discriminated and/or retaliated against him in the following ways:

1. hiring Mr. Rich in December 2012;

2. requiring him to formally apply for an "out-of-class" Compliance Inspector 2 position, not allowing him to stay in that position for over 100 days, requiring him to reapply for the position in order to remain in the position permanently, and requiring him to go through a second probationary period once Metro hired him for the permanent position (Docket No. 23 at ¶ 33, 48);

3. selecting Mr. Rich for a Codes Department position in December 2013 without allowing others to apply and compete for the position; and

4. requiring him to help move heavy furniture in May 2014 (*Id.* at ¶ 37).

On February 24, 2015, Plaintiff filed a second EEOC charge with the assistance of counsel, raising the second through fourth allegations of discrimination and retaliation listed above. Docket No. 42-2 at 24–27. These claims were raised in his Amended Complaint but not in his initial EEOC charge, which only raised the first claim listed above. This second EEOC charge also indicates his intention to initiate proceedings with the Tennessee Human Rights Commission.

## II. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" *Id*. (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Van Gorder v. Grand Trunk W.R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to defeat summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (quoting *Anderson*, 477 U.S. at 252). "As to materiality, the substantive law will identify which facts are material. Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. Legal Analysis

#### A. December 2012 Field Crew Supervisor Position

Defendant argues that Plaintiff's Title VII and THRA claims related to this position are time barred. A Title VII complainant must notify the Equal Employment Opportunity Commission ("EEOC") of her charge within 180 days of the alleged wrongdoing, or 300 days if the plaintiff notifies a parallel state agency of the charge. *Berger v. Medina Cty. Ohio Bd. of Cty. Comm'rs*, 295

F. App'x 42, 44 (6th Cir. 2008) (citing 42 U.S.C. § 2000e–5(e)(1)). If the EEOC decides not to file its own action and issues a Notice of the Right to Sue, the complainant has ninety days from the giving of such notice to file a civil action. 42 U.S.C. § 2000e–5(f)(I). Each discrete act of discrimination, such as termination or failure to hire, is a separate, actionable, unlawful employment practice, and a plaintiff can file a charge to cover only the discrete acts that occurred within the appropriate time period. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002). A discrete act occurs on the day it happens, and such acts are not actionable if time-barred, even when they are related to acts alleged in timely-filed charges. *Id.* at 113.

Under the THRA, a civil cause of action must be filed within one year after the alleged discriminatory practice ceases. Tenn. Code Ann. § 4–21–311(d). A discrete discriminatory act "ceases" as of the time it occurs. *Booker v. The Boeing Co.*, 188 S.W.3d 639, 645 (Tenn. 2006). That is, "an employee 'discovers' that an injury has been sustained for purposes of the statute of limitations when the employer provides unequivocal notice of the adverse employment action." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001).

Because the failure to hire is a discrete act, the continuing violation doctrine is not applicable to Plaintiff's failure to hire claim under Title VII or the THRA. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)*; Booker*, 188 S.W.3d at 645.

Because Plaintiff did not initiate proceedings with a state or local agency to address the December 2012 Field Crew Supervisor position, he had 180 days from December 2012 to file his EEOC charge. He did not file the EEOC charge related to this incident until September 24, 2013. Plaintiff responds that the Court should not find his claim to be time barred because it would be unreasonable to require a *pro se* individual to include the "magical language" of "Tennessee Human

6

Rights Commission" on his EEOC charge. Docket No. 50 at 15. However, because Plaintiff has made no showing that he initiated proceedings with a state or local agency by any mechanism—whether by including that on the EEOC charge or otherwise—the 180-day limitations period applies.[1] Accordingly, Plaintiff's Title VII claim that Metro discriminated against him by not allowing him to compete for the Field Crew Supervisor position in December 2012 time barred. His THRA claim related to this failure to hire incident is also time barred, as this action was filed on August 19, 2014, well over a year from the allegedly discriminatory practice.

### B. Compliance Inspector 2 Position

Plaintiff alleges that MWS's requiring him to formally apply for the out-of-class Compliance Inspector 2 position, not allowing him to stay in the position past 100 days, requiring him to reapply for the position, and requiring him to go through a second probationary period once hired for the permanent position, constituted racial discrimination. Docket No. 23 at ¶ 33. Plaintiff is precluded from pursuing this as a Title VII claim because, by filing an EEOC charge related to the Compliance Inspector 2 position *after* filing this suit rather than *before* filing it, Plaintiff has failed to satisfy a condition precedent to filing suit in this Court. *Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir.

---

[1]With respect to Title VII's time requirements, the Supreme Court has held as follows:

> In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). In *Mohasco*, the Court rejected arguments that strict adherence to a similar statutory time restriction for filing a charge was "unfair" or that "a less literal reading of the Act would adequately effectuate the policy of deferring to state agencies." *Id.*, at 824–825. Instead, the Court noted that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.*, at 825.

*Morgan*, 536 U.S. at 108-09 (brackets in original).

2003) ("It is well-established that a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to filing suit in the district court. . . .") (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).

A lack of clarity in the pleadings regarding the dates on which these discrete acts occurred prevents the Court from being able to determine whether the claims are timely under the THRA. However, even assuming that *all* of the discrete acts about which Plaintiff complains related to the Compliance Inspector 2 position were timely brought in federal court for purposes of the THRA, Plaintiff has failed to establish a *prima facie* case with respect to each act. A plaintiff may establish a *prima facie* claim of employment discrimination under Title VII and the THRA based upon direct or indirect, circumstantial evidence. Where, as here, a plaintiff offers only indirect evidence of discrimination, the claims are analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas* and its progeny, the plaintiff must first make out a *prima facie* case of discrimination by showing: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). If the plaintiff presents facts which, if true, would prove each of these elements, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the termination. *McDonnell Douglas Corp.*, 411 U.S. at 802. "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Blizzard*, 698 F.3d at 283 (citation omitted). "Despite the shifting burdens of production, the ultimate burden of persuasion remains at all times with the plaintiff." *Lindsay v. Yates*, 578 F.3d 407, 421

(6th Cir. 2009).

First, as to Metro's requirement that he apply for the out-of-class position rather than informally placing him in it, even assuming Plaintiff has established the first and second elements of a *prima facie* case, Plaintiff has not put forth evidence from which a reasonable jury could conclude that Metro's requiring Plaintiff to formally apply for the out-of-class position was motivated by racial discrimination. Title VII discrimination claims do not require proof that the prohibited criterion was the but-for cause of the prohibited conduct, but instead require only "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013). There is no evidence that would suggest that racial animus was even one of Metro's motives in requiring a formal application for the out-of-class placement. Furthermore, Metro's act of requiring a formal application for this out-of-class is not an adverse employment action.

Plaintiff has also failed to produce evidence from which a reasonable jury could conclude that Metro's refusal to allow Plaintiff to remain in the out-of-class position for more than 100 days, in compliance with the Civil Service Rules, was the result of racial discrimination. Plaintiff does not dispute that during 2012–2014, 42% of MWS employees who were allowed to work out of class for more than 100 days were African American. Docket No. 52 at 9. Although it is unclear from the record *why* Metro did not allow Plaintiff to spend more than 100 days out of class, when apparently it allows other employees to do so, Plaintiff has nonetheless failed to meet his burden of persuasion to demonstrate that MWS's actions were motivated even in part by his race.

The Plaintiff has similarly failed to show that Metro was motivated by race in requiring him

9

to apply for the position again in order to be considered for it. Also, because Metro ultimately selected him for the position, he has not proven he was subject to an adverse employment action.

Plaintiff has not presented evidence from which a reasonable jury could conclude that Metro's requirement that he undergo a second probationary period was motivated by his race. In addition, this requirement does not constitute an adverse employment action.

### C. December 2013 Codes Department Position

#### 1. Title VII Claim

Plaintiff's Amended Complaint alleges that Metro discriminated against him by hiring Mr. Rich in December 2013 for a Codes Department position, which Metro did not make available for others to apply or compete for. (Docket No. 23 at ¶ 29 (Am. Compl.).) Having completed discovery, Plaintiff does not dispute at this point that this position was an open, announced position, for which 151 people applied and 2 individuals were selected. Docket No. 52 at 4. He also does not dispute that he did not apply for this position. *Id.* at 5. It is unclear whether Plaintiff intends to proceed on the merits with this claim. It is clear that he was mistaken in his belief that the position was not an open position. However, his response to Defendant's motion for summary judgment focuses much on MWS's handling of the hiring of Mr. Rich, from initially hiring him in December 2012 for a position that had not been open or announced, to retaining him in a different position in a manner not in compliance with the Civil Service Rules, to hiring him for a permanent position in the Codes Department in December 2013.

To the extent Plaintiff does intend to proceed on the merits of Metro's hiring of Mr. Rich for this position, his Title VII claim is precluded for two reasons. First, it is time barred. Because Plaintiff filed his first EEOC charge *pro se*, the Court construes his complaint liberally and will

10

"consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). However, even construing Plaintiff's first EEOC charge liberally, the December 2013 incident was not reasonably related to nor did it grow out of the factual allegations contained therein. Because he did not initiate proceedings with a state or local agency, Plaintiff had 180 days from December 2013 to bring a new EEOC charge related to this event. Instead, he did not bring an EEOC charge based on this event until February 24, 2015. Second, as with the Compliance Inspector 2 position, because Plaintiff filed of an EEOC charge related to this incident *after* filing suit rather than *before*, he has failed to satisfy a condition precedent to filing suit in this Court. Furthermore, even if Plaintiff had exhausted his administrative remedies with respect to this incident, he would be unable to establish a prima facie case of discrimination for the same reason he is unable to establish a prima facie case for purposes of the THRA, as discussed below.

### 2. THRA Claim

Plaintiff's THRA claim related to this incident is timely filed, as he did file in federal court within a year of the date of this alleged failure-to-hire incident. In order to establish a prima facie case of discrimination based on a failure to promote, in the absence of direct evidence of discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000).[2] If the plaintiff establishes a prima facie case, the burden

---

[2] "The THRA is a state law analogue to Title VII and the statutes are analyzed identically." *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed. Appx. 744, 745 n. 1 (6th Cir.2008).

shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If it does so, the burden returns to the plaintiff to show that the defendant's reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557–58 (6th Cir. 2009). Throughout this burden-shifting approach, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Id.* To show pretext, Plaintiff may show that (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the action, or (3) the proffered reason was insufficient to warrant the adverse action. *Id.*

Plaintiff cannot establish a prima facie case for failure to promote. He was not considered for the position because he did not apply for it. He has also failed to meet his burden of persuasion on the fourth element of the *prima facie* case. Even if Plaintiff had applied and had been considered for this position, he did not have similar qualifications to Mr. Rich who has considerably more extensive and more recent management experience, a requirement of this position. Metro has offered a legitimate, nondiscriminatory reason that it would not have hired Plaintiff for this position, even if Plaintiff had applied, based on Plaintiff's performance issues, which Plaintiff does not have evidence to rebut.

### D. May 2014 Moving Furniture

Plaintiff claims that Metro required him to move furniture in May of 2014 in retaliation for his filing an EEOC charge in September of 2013.[3] To make a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) the exercise of protected rights was known to the Defendant; (3) Defendant took an adverse employment action against Plaintiff, and (4) there

---

[3]Plaintiff states in his response to Metro's motion for summary judgment that his only retaliation claim is related to the requirement that he move furniture in May 2014. Docket No. 50 at 20. To the extent that his Amended Complaint raised other retaliation claims (*see* Docket No. 23 at ¶ 33), he has abandoned those claims.

12

was a causal connection between the protected activity and the adverse action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). To establish a causal connection, Plaintiff must produce sufficient evidence from which one could draw an inference that Defendant would not have taken the adverse employment action had he not engaged in activity protected under Title VII. *Taylor*, 703 F.3d at 339. A plaintiff making a Title VII retaliation claim must establish that his or her protected activity was a "but-for" cause of the alleged adverse action by the employer. *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533–34 (2013). Once a *prima facie* showing is made, the Defendant must articulate a legitimate non-retaliatory reason for its action, and then the burden shifts back to the Plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation. *Harris v. Metropolitan Gov't of Nashville and Davidson County*, 594 F.3d 476, 485 (6th Cir. 2010).

Metro is entitled to judgment on this issue because Plaintiff has failed to meet his burden of persuasion that there was a causal connection between Metro's asking him to move furniture and his protected activity. Plaintiff does not dispute that most Metro employees, at some point in their careers with Metro, have been asked to move furniture. Docket No. 52 at 10. The requirement that an employee spend one to two days helping to move furniture also does not constitute an adverse employment action. Furthermore, even if the Plaintiff could show the elements of a *prima facie* retaliation case, he does not have evidence to successfully rebut the legitimate, nondiscriminatory reasons Metro has given for asking him to move furniture. Plaintiff was a part of a two-member team that had been working on identifying problem bicycle grates. Docket No. 52 at 10. Two of Metro's civil engineers, both African American, decided that Plaintiff and his team-mate would be good choices for helping move some furniture because the bicycle-grate program was not time sensitive

13

and the team working on it only had two members. Other teams were doing more time-sensitive projects and had more members, such that losing one or two of the team members would make their projects more difficult to complete. Docket No. 43-4 at 2 (Swift Decl.); Docket No. 52 at 10.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Defendant's Motion for Summary Judgment. Docket No. 42.

An appropriate order is filed herewith.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE